UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) No. S1-4:20CR00022 ERW ) |
| DERONTE MCDANIELS, | ) ) |
| Defendant. | ) ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant Deronte McDaniels, represented by defense counsel Anthony Muhlenkamp, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's waiver of indictment and voluntary plea of guilty to a superseding information, charging defendant under Title 18, United States Code, Section 924(o) with conspiracy to possess and discharge a firearm, in violation of Title 18, United States Code, Section 924(c), the United States agrees that no further federal prosecution will be brought in this District relative to

1

the defendant's violations of federal law, known to the United States at this time, arising out of the events set forth in the superseding information.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that the defendant may argue for a sentence as low as 120 months imprisonment, but not any lower. The United States may argue for a sentence as high as 180 months imprisonment, but no higher. The parties further agree and acknowledge that the Court is neither a party to this agreement nor is the Court bound by the terms of this agreement.

### 3. ELEMENTS:

As to **Count One** of the superseding information, the defendant admits to knowingly conspiring to violate Title 18, United States Code, Section 924(c) and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1. Beginning at a time unknown but including October 2019, two or more people reached an agreement to commit the crime of possession of a firearm in furtherance of a drug trafficking crime;

2. The defendant voluntarily and intentionally joined in the agreement;

3. At the time the defendant joined in the agreement or understanding, the defendant knew the purpose of the agreement; and

4. While the agreement was in effect, a person or persons who had joined in the agreement knowingly did one or more acts for the purpose of carrying out or carrying forward the agreement.

### 4. FACTS:

2

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Defendants Arrion Jones, Deoman Reeves and Franklin Bell conspired with each other and others known and unknown to distribute and possess with intent to distribute fentanyl. The investigation was initiated by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) in October 2019 after ATF was contacted by the University City police department. The U. City P.D. asked the ATF for assistance in tracking the whereabouts and activities of Reeves, who was a suspect in a shooting incident that occurred in University City on September 26, 2019. Reeves had been identified as the suspect in the shooting. Reeves had also been identified as a distributor of narcotics.

ATF applied for and obtained a court-ordered precision location warrant on Reeve's phone. Surveillance commenced and revealed that Jones, Reeves and Bell were actively distributing fentanyl within the Eastern District of Missouri.

On October 20, 2019 co-conspirator Arrion Jones was shot in the arm. Defendant McDaniels was present for and witnessed the shooting. McDaniels was the intended target of this drug-related shooting. Defendant returned fire, using Jone's handgun. Jones then fled to his apartment and told Reeves what had occurred. The following day (Oct. 21, 2019), after spending the night at a hotel, Reeves, Bell and McDaniels picked up Jones and then drove in Reeve's rental vehicle (a silver SUV) to University City, seeking to retaliate for the shooting of Jones. Defendant McDaniels knew that his co-conspirators were armed with a firearm. They were

looking for two individuals they suspected were responsible for the shooting of Jones – D.D. and T.M.

Pings of Reeve's phone and physical surveillance confirmed for the ATF that Reeves was in the University City area on the afternoon of October 21, 2019. Surveillance cameras in the area of Kingsland and Corbitt showed Reeve's rental car was in fact in the area at the time of the shooting. Reeves parked the car. He was armed with a pistol. Bell and McDaniels were also armed with pistols. Reeves, Bell and McDaniels got out of the rental vehicle and approached a residential area, where Jones had pointed out who he thought to be D.D., the intended target. Jones remained in the car. Reeves, Bell and McDaniels approached the victim and began firing their weapons. They all then fled back to the vehicle and left the scene. After the shooting, the conspirators learned that they had shot the wrong person. The victim D.A. was not involved in the shooting of Arrion Jones the day before and was not D.D., the intended target of the retaliatory shooting.

The University City police responded to shots fired around 3:44 p.m. on October 21, 2019 near the area of 6600 Corbitt. A witness described a suspect, dressed all in black, enter a silver SUV and flee the scene after shots were fired. The victim D.A. was found lying facedown in the rear yard of 1112 Kingsland. After the police and paramedics attempted life-saving measures, D.A. was transported to the hospital. He was pronounced dead at approximately 4:08 p.m.

Police recovered three groups of shell casings from the area of the homicide. A police officer heard the shooting and described two different calibers of weapons. Ballistic evidence recovered at the scene of shooting was entered into the National Integrated Ballistic

4

Information Network (NIBIN) for comparison purposes. A shell casing from the scene of the murder matched a shell casing found inside the apartment where Jones had been shot in the arm on October 20, 2019. Defendant informed investigators that Jones was armed on October 20, 2019 when he was shot in the arm and that Defendant returned fire from within the apartment. Investigators therefore believe that one of the weapons (a .40 caliber handgun) used to murder D.A. was Jone's weapon. That weapon was used by either Reeves, McDaniels or Bell during the murder of D.A.

Still images of two of the suspects were developed from surveillance footage and shown to multiple witnesses. Eventually, Defendant McDaniels was identified. After he learned that he was wanted by the U. City police for questioning, Defendant surrendered to the U. City police, waived his right to an attorney and gave a voluntary statement.

In his statement, Defendant admitted his involvement in the murder of D.A. Subsequently, Defendant made a voluntary statement to agents with the ATF. Defendant implicated Reeves and Bell in the shooting and killing of D.A. and admitted his own involvement in the conspiracy to possess a firearm in furtherance of drug trafficking. Surveillance footage from a Red Roof Inn confirmed that Reeves (driving his rented silver SUV), Bell and Defendant stayed overnight at the hotel on October 20, 2019 and were dressed in clothing that matched eyewitness descriptions of the three suspects who shot and killed D.A. Reeves was dressed in all black.

Following the murder, an ATF confidential informant (CI) made contact with Reeves and arranged to purchase fentanyl in early November 2019. Thereafter, the ATF conducted multiple controlled buys utilizing the CI and undercover agents. The transactions were electronically

recorded. Reeves, Bell and Jones all utilized cell phones to facilitate their distribution of narcotics. They traveled together in vehicles and were consistently armed with guns. They cut raw fentanyl with inert materials such as Dormin, put the drugs in capsules and then sold the capsules. During the narcotics sales the defendants typically remained in their vehicle and conducted hand-to-hand sales with customers who paid cash for the drugs. Beginning at a time unknown but to include October 2019 up until the date of the indictment (January 9, 2020), Jones, Reeves and Bell conspired to and in fact distributed fentanyl, aided and abetted by each other and others both known and unknown.

By this plea agreement, Defendant acknowledges and understands that his co-conspirators came to an agreement and understanding that the group would proceed to University City for the purpose of retaliating for the shooting of Jones the previous day. To that end, Defendant witnessed Reeves and Bell exit Reeve's rented SUV, armed with handguns, and approach the victim, intending to discharge their firearms.

The parties agree that, for purposes of the elements set forth above and the sentencing guidelines calculations below, a .40 caliber M & P, semi-automatic pistol is the firearm cited in the offense of conviction and only firearm possessed by McDaniels.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

## 6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:

6

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that he following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

**a. Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** The parties agree that the base offense level is found in Section 2K2.1 and depends on the nature of the firearm, the defendant's criminal history and other factors therein, including whether or not the use of the firearm resulted in death.

**(2) Specific Offense Characteristics: :** The parties agree that 4 levels should be added pursuant to Section 2K2.2(b)(6)(B) because defendant conspired to possess or transfer a firearm with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, to-wit: drug trafficking and discharge of a firearm in furtherance of drug trafficking where death results and the death being a murder as defined by Title 18, United States Code, Section 1111.

Accordingly, application of the Sentencing Guidelines could include the application of Section 2K2.1(c)(1)(B) which provides that an offense involving first degree murder has a base offense level of 43.

**b. Chapter 3 Adjustments:**

**(1) Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information

presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

    **c. Estimated Total Offense Level:** The parties make no estimate as to the estimated total offense level at this time. The parties reserve the right to provide an estimated total offense level at sentencing, after having had the opportunity to review the presentence investigation report.

    **d. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

    **e. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

    **a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

## 8. OTHER:

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or

indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

12/1/2021
Date

11-28-21
Date

PAUL J. D'AGROSA (#36966MO)
Assistant United States Attorney

DERONTE MCDANIELS
Defendant

13

11/28/21
Date

_____ #55029MO
ANTHONY MUHLENKAMP
Attorney for Defendant

14